**IN THE COURT OF APPEALS OF IOWA**

No. 24-0750
Filed July 3, 2024

**IN THE INTEREST OF N.S.,**
**Minor Child,**

**J.S., Father,**
        Appellant,

**A.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka,

Judge.


        Parents separately appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**


        Matthew W. Boleyn of Boleyn Law, P.C., Dubuque, for appellant father.

        Gina L. Kramer of Kramer Law Office, PLLC, Dubuque, for appellant

mother.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

        Kristy L. Hefel of Public Defender's Office, Dubuque, attorney and guardian

ad litem for minor child.


        Considered by Ahlers, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

Parents separately appeal the termination of their parental rights to their child, born in January 2023. Family-preservation services were put in place after the child tested positive for an unprescribed prescription drug at birth. But the mother later admitted to near-daily use of methamphetamine, and the father was in prison. The child was removed from the parents' custody in June and adjudicated in need of assistance the next month. Despite repeated attempts at substance-use treatment, the mother kept testing positive for methamphetamine. The father was not paroled to a residential correctional facility until December 2023, where he remained when the termination hearing was held in March 2024.

Following that hearing, the juvenile court terminated both parents' rights under Iowa Code section 232.116(1)(h) (2024) and the mother's rights under section 232.116(1)(*l*). On appeal, the mother challenges the sufficiency of the evidence supporting one of those grounds for termination, argues termination is not in the child's best interests because of the parent-child bond, and requests a "brief extension" to work toward reunification. The father only requests an extension of time. We review these claims de novo under our familiar three-step analysis in termination proceedings. *See In re L.B.,* 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3).

Beginning with the first step, although the mother's rights were terminated under both section 232.116(1)(h) and (*l*), she only challenges the latter ground. While we could summarily affirm on the unchallenged ground, we elect to briefly

address its merits.[1]  *See, e.g.*, *In re S.S.*, No. 24-0071, 2024 WL 1757564, at *1 (Iowa Ct. App. Apr. 24, 2024).  In the months before the termination hearing, the mother continued to use methamphetamine, despite successfully completing a thirty-day treatment program in October 2023.  She admitted relapsing on methamphetamine in January 2024.  The mother then tested positive for methamphetamine in February and again in March—just a few days before the termination hearing.  Some of these positive tests happened when she was living in structured shelters for women and participating in substance-use treatment.  The mother's ongoing use of methamphetamine is clear and convincing evidence that the child could not be returned to her custody at the termination hearing.  *See, e.g.*, *In re J.S.*, No. 23-0399, 2023 WL 3335325, at *2 (Iowa Ct. App. May 20, 2023) ("[W]e are unable to conclude that the father's methamphetamine use is at an end, so we conclude the child cannot be returned to the father's custody safely.").  We accordingly affirm termination under section 232.116(1)(h).

Combining the second and third steps, the mother argues termination is not in the child's best interests because she "shares a bond with" the child and disrupting that bond "would be detrimental."  Because the mother does not address how the best-interest factors in section 232.116(2) weigh against termination, we limit our analysis to the bond exception in section 232.116(3)(c).  *See In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023)

---

[1] Though we are addressing the merits in this case, we have found similarly deficient claims waived in others.  *See, e.g.*, *In re A.S.*, No. 23-1625, 2023 WL 8449568, at *1 (Iowa Ct. App. Dec. 6, 2023).  If parents want to challenge the statutory grounds for termination, we urge counsel to include all grounds for termination in the petition on appeal to avoid waiver.

("Consideration of the parent-child bond is not a part of our best-interests analysis."); *see also In re L.L.*, No. 24-0431, 2024 WL 2045335, at *3 (Iowa Ct. App. May 8, 2024) (noting best-interest claim based on bond exception "is more properly addressed under the third step").

There was certainly a bond between the mother and child—an undisputed one according to the juvenile court. "Yet the existence of a bond is not enough." *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). To avoid termination under section 232.116(3)(c), the "law requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *Id.* (quoting Iowa Code § 232.116(3)(c)). While the mother testified that termination would "almost be borderline abuse" and "cause a tremendous amount of trauma" to the child, she didn't present any evidence to support that opinion. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception."). Given the child's young age and length of removal, we agree with the juvenile court that this exception does not apply.

Last, both parents argue the juvenile court should have granted "a brief extension of time for reunification." A grant of additional time to work toward reunification is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Sadly, we cannot reach that conclusion here for either parent.

The mother asserts she "substantially complied with the department's expectations" by finding an apartment, getting a job, and engaging in treatment and parenting education. We applaud the mother for those positive steps. But

they came in the weeks just before the termination hearing, when she was still testing positive for methamphetamine. *See In re E.W.*, No. 24-0186, 2024 WL 1552597, at *2 (Iowa Ct. App. Apr. 10, 2024) (declining to defer permanency where a parent has tested positive for methamphetamine shortly before the termination hearing). And we agree with the juvenile court that given the mother's history, which included years of substance use and housing instability,[2] she will "need a significant period of time to establish" that she can maintain her progress. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Given [the father's] past performance we are not convinced additional time or services will change him."). We accordingly conclude additional time was unwarranted for the mother.

It's also unwarranted for the father, who had little involvement in these proceedings until he was released from prison in December 2023. Even then, he only participated in supervised visits. The father was still in a residential correctional facility at the termination hearing, and he had made little progress toward being released. Because there was no guarantee the father would be released within six months, we cannot conclude an extension of time was warranted. *Cf. In re L.S.*, No. 21-2000, 2022 WL 2826024, at *1 (Iowa Ct. App. July 20, 2022) ("We don't even know if [the parent] will be out of jail or prison by then. So we have no basis to conclude an extension of time is warranted."). Beyond the uncertainty about when he would be released, the father had no

---

[2] The mother, who was twenty-six years old at the termination hearing, began using marijuana when she was thirteen years old and methamphetamine when she was eighteen. During the short time when the child was in her care, the child twice tested positive for illegal substances. And the mother moved twelve times in the nine months the child was removed from her care and was homeless for several months.

concrete plans for where he would go once released. The father stated in his petition on appeal that he intends to live with the mother. But his parole officer told the family's case manager that would not be an approved living situation because of the mother's positive drug tests, and the case manager testified that the father's residence with the mother would be a barrier to reunification. We accordingly agree with the juvenile court that additional time is not appropriate for the father either.

**AFFIRMED ON BOTH APPEALS.**